IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

STEVEN MATTHEW BOAS,          *

      Plaintiff,                *

v.                            *       Civil No. TJS-22-0979

JASON GRAVES, *et al.*,         *

      Defendants.         *

*     *     *     *     *     *

**MEMORANDUM OPINION**

This case is assigned to me for all proceedings, by the consent of the parties, pursuant to 28 U.S.C. § 636(c). ECF No. 34. Pending before the Court are the following motions: Defendant Jason Graves's Motion to Dismiss or, in the Alternative, for Summary Judgment (ECF No. 53); Defendants Timothy K. Cameron and the Board of County Commissioners of St. Mary's County's Motion to Dismiss or, in the Alternative, for Summary Judgment (ECF No. 54); Plaintiff Steven Matthew Boas's motions for joinder of St. Mary's County, Maryland (ECF No. 72), St. Mary's County Sheriff's Office (ECF No. 73), and William Rishel (ECF No. 74); and Plaintiff Steven Matthew Boas's Motion for Leave to File Amended Complaint (ECF No. 77) and corresponding motion for leave to file physical exhibit (ECF No. 82). Having considered the parties' submissions (ECF Nos. 51, 53, 54, 57, 72, 73, 74, 76, 77, 78, 79, 80, 81, 82, 83, 84, 85, 86 & 88), I find that a hearing is unnecessary. *See* Loc. R. 105.6. For the following reasons, Defendants' motions will be granted and Plaintiff's motions will be denied.

## I.    Background

Plaintiff Steven Matthew Boas ("Mr. Boas") filed this lawsuit against Defendants Jason Graves ("Deputy Graves"), Timothy K. Cameron ("Sheriff Cameron"), the State of Maryland,

Leonardtown, Maryland, the Board of County Commissioners for St. Mary's County, Maryland, and John Does 1-4. The parties have stipulated to the dismissal of Plaintiff's claims against the State of Maryland and Leonardtown, Maryland. ECF No. 69. The Court approves the parties' stipulation and will order that Plaintiff's claims against the State of Maryland and Leonardtown, Maryland be dismissed with prejudice.

Plaintiff raises the following claims in his Complaint: Unlawful arrest and search, in violation of the Fourth and Fourteenth Amendments, pursuant to 42 U.S.C. § 1983 and Article 24 of the Maryland Declaration of Rights, as to Deputy Graves and Defendant Doe[1] (Count I); intentional infliction of emotional distress, as to Deputy Graves (Count II); retaliation for protected speech, in violation of the First and Fourteenth Amendments, pursuant to 42 U.S.C. § 1983 and Articles 24 and 40 of the Maryland Declaration of Rights, as to Deputy Graves and Defendant Doe (Count III); municipal and supervisory liability, as to the Board of County Commissioners for St. Mary's County, Maryland (Count IV); negligent hiring and retention, as to Sheriff Cameron (Count V); and *respondeat superior*, as to Sheriff Cameron (Count VI).

In response to Plaintiff's Complaint, each of the Defendants moved to dismiss or for summary judgment. After Defendants' motions were briefed, Mr. Boas filed motions seeking leave to join additional defendants and to amend his Complaint. All motions are fully briefed and ripe for decision.

## II.   Factual Background

The following facts are undisputed and are viewed in the light most favorable to Mr. Boas, the non-moving party.

---

[1] Plaintiff's intent in naming the Doe Defendant in Counts I and III was to name Deputy William Rishel.

On March 23, 2020, then-Governor Larry Hogan issued a "Stay-at-Home" Executive Order that required all persons living in Maryland to stay at home except "to conduct or participate in Essential Activities," which included, among other activities, obtaining groceries and other household supplies. A copy of the Stay-at-Home order is filed at ECF No. 53-3. The Stay-at-Home Order was in effect at all relevant times. Mr. Boas does not challenge the constitutionality or applicability of the Stay-at-Home order.

On April 22, 2020, Mr. Boas went to a Target store in St. Mary's County, Maryland to buy groceries. Buying groceries was permitted as an "essential activity" in the Stay-at-Home order. As he was walking toward the store entrance, Mr. Boas observed a police officer speaking with a Black man riding a bicycle. The officer stopped the man on the bicycle and instructed him not to ride it in the Target parking lot. The officer also told the man that the Stay-at-Home order was in place.

Mr. Boas took offense to the officer's interaction with the man on the bicycle. Mr. Boas took out his phone, began recording the officer, and followed him into Target. Once inside, Mr. Boas told the officer that the Stay-at-Home order allows people to ride bicycles and that he was disappointed in the officer. The officer dismissed Mr. Boas's comments and walked away. Upset by the encounter, Mr. Boas approached a group of employees in the customer service area of Target and told them about what he had seen. Then Mr. Boas went about his shopping at Target.

After Mr. Boas completed his purchase, he exited the store. Still upset about what had happened earlier, he took out his phone and started pacing in the area outside the Target Starbucks window. He took pictures of the police in the parking lot and recorded a video. Soon enough, two officers—Jason Graves and William Rishel ("Deputy Rishel")—approached Mr. Boas. It is this interaction that gives rise to Mr. Boas's suit.

Video evidence from the officers' body worn cameras shows the officers' interaction with Mr. Boas from an objective perspective. ECF No. 57, Ex. 1C. The footage opens with Deputy Graves and Deputy Rishel discussing what Mr. Boas is doing. Deputy Graves says that he already told Mr. Boas about the Stay-at-Home order, and that he needed to "move on" when he was done with his essential reasons for being out. Deputy Graves notes that Mr. Boas had disagreed with him. *Id.* at 13:20-14:09.[2] Deputy Graves observes that Mr. Boas "is back." *Id.*

The officers approach Mr. Boas and request his identification. *Id.* at 14:10. Mr. Boas states that he only has to provide his name. Deputy Graves tells Mr. Boas that he must identify himself and asks, "do you really want to get charged over this?" *Id.* at 14:17-14:26. Mr. Boas asks if he can leave and takes several steps. *Id.* at 14:30. Deputy Graves explains that Mr. Boas is free to leave, but in light of the Stay-at-Home order, he must return home when he is finished with his essential shopping. *Id.* at 14:31-39. Turning back to face the officer, Mr. Boas again mentions the man who was riding his bicycle. *Id.* Deputy Graves asks Mr. Boas, "are you done shopping?" *Id.* a 14:48. Mr. Boas responds: "You're a bully, man. I can do whatever I want to do. I don't have to tell you what I'm doing." *Id.* at 14:48-14:55.

 Mr. Boas asks if Deputy Graves wants to arrest him, and Deputy Graves responds that he will arrest him if Mr. Boas fails to leave. *Id.* at 14:56-15:02. Mr. Boas asks how much time he has until he is arrested, to which Deputy Graves responds that he will be arrested "right now," and asks if Mr. Boas is done shopping. *Id.* at 15:02-15:08. Mr. Boas asks if Deputy Graves knows what wrongful arrest is. *Id.* Deputy Graves then arrests Mr. Boas. *Id.* at 15:15. Mr. Boas asks if he can put his mask on, but Deputy Graves does not allow him to do so. *Id.* at 15:21.

---

[2] The time references in this opinion are to the time stamps on the body worn camera video.

The officers advise Mr. Boas that he is being arrested because he did not go home after he had completed his essential shopping at Target, even after he was asked to leave. *Id.* at 15:30-15:46. Deputy Rishel tells Mr. Boas that he is being charged with failure to abide by the Stay-at-Home order. *Id.* at 16:02-16:06. Deputy Graves removes Mr. Boas's bag containing his groceries, and asks Mr. Boas, "what part of 'go home now or you'll be arrested' did you not understand . . . did you think I was bluffing?" *Id.* at 16:54-16:59. Deputy Graves goes on, "sir, you were standing here, videotaping, doing nothing, doing nothing. It's all on tape." *Id.* at 17:05-17:12. Deputy Graves then walks Mr. Boas away from the camera and the footage cuts off. *Id.* at 17:13-17:19.

Mr. Boas was held in a squad car in the Target parking lot. The officers released Mr. Boas from the squad car about one hour after they arrested him. They told Mr. Boas that he could expect a ticket in the mail and that he may have to go to court. In fact, Mr. Boas was never charged with violating the Stay-at-Home order or any other offense arising from his visit to Target on April 22, 2020. Mr. Boas claims that he has suffered damages as a result of his arrest.

## III.  Legal Standard

### A.  Rule 12(b)(6)

Rule 12(b)(6) permits a court to dismiss a complaint if it fails to "state a claim upon which relief can be granted." "The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint, [and not to] resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (internal quotation marks omitted). A complaint must consist of "more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

545 (2007). When considering a motion to dismiss, a court must accept as true the well-pled allegations of the complaint and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). While a court must take the facts in the light most favorable to the plaintiff, it "need not accept the legal conclusions drawn from the facts" and "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Markets, Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000).

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint generally "does not need detailed factual allegations." *Id.* So long as the factual allegations are "enough to raise a right to relief above the speculative level," the complaint will be deemed sufficient. *Id.* A "well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable and that a recovery is very remote and unlikely." *Id.* at 556 (internal quotation marks omitted).

## B.     Rule 56

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden is on the moving party to demonstrate the absence of any genuine dispute of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). If sufficient evidence exists for a reasonable jury to render a verdict for the party opposing the motion, then a genuine dispute of material fact is presented and summary judgment should be denied. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Yet the "mere existence of a scintilla of evidence

in support of the [opposing party's] position" cannot defeat a motion for summary judgment. *Id.* at 252.

The facts themselves, and the inferences to be drawn from those facts, must be viewed in the light most favorable to the opposing party. *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008). A party may not rest on the mere allegations or denials of its pleading but must cite "particular parts of materials in the record" or "show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Supporting and opposing affidavits are to be made on personal knowledge, contain such facts as would be admissible in evidence, and show affirmatively the competence of the affiant to testify to the matters stated in the affidavit. Fed. R. Civ. P. 56(c)(4).

### C.    Section 1983 and Constitutional Claims

Under 42 U.S.C. § 1983, a plaintiff may file suit against any person who, acting under color of state law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. *Ogunsula v. Maryland State Police*, No. ELH-20-2568, 2021 WL 6105503, at *13 (D. Md. Dec. 23, 2021) (citing *Filarsky v. Delia*, 566 U.S. 377, (2012); *Owens v. Balt. City State's Attorney's Office*, 767 F.3d 379 (4th Cir. 2014)). Section 1983 "'is not itself a source of substantive rights,' but provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)); *see Safar v. Tingle*, 859 F.3d 241, 245 (4th Cir. 2017). In other words, § 1983 allows "a party who has been deprived of a federal right under the color of

state law to seek relief." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999).

To state a claim under § 1983, a plaintiff must allege (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a "person acting under the color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); *see Davison v. Randall*, 912 F.3d 666, 679 (4th Cir. 2019).

## IV.   Discussion

### A.   Sheriff Cameron's Motion to Dismiss (ECF No. 54)

Sheriff Cameron moves to dismiss Plaintiff's claims because he is immune from suit in his official capacity under the Eleventh Amendment and has statutory immunity for suits against him in his individual capacity. ECF No. 54-1 at 12-13. Plaintiff brought two claims against Sheriff Cameron: negligent hiring and retention (Count V) and *respondeat superior* (Count VI). ECF No. 1. Both claims are against Sheriff Cameron in his official capacity. *Id.* ¶ 28.

In Maryland, a suit against a state official in his official capacity is treated as a suit against the State of Maryland. *Brent v. City of Cumberland Police Dep't*, No. JKB-22-1349, 2023 WL 2457591, at *6 (D. Md. Mar. 10, 2023) ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.") (quoting *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985)). Sheriff Cameron is a state official. *See Rucker v. Harford Cnty.*, 316 Md. 275, 281 (1989).

Under the Eleventh Amendment, a state, its agencies and departments are immune from suits in federal court brought by its citizens or the citizens of another state, unless it consents. *See Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). The same proscription

applies to suits against state agencies and state officials acting in their official capacities. *See Graham*, 473 U.S. at 165–67 & n.14; *Alabama v. Pugh*, 438 U.S. 781, 782 (1978) (per curiam).

The Fourth Circuit has not definitively ruled "whether a dismissal on Eleventh Amendment immunity grounds is a dismissal for failure to state a claim under Rule 12(b)(6) or a dismissal for lack of subject matter jurisdiction under Rule 12(b)(1)." *Gross v. Morgan State Univ.*, 308 F. Supp. 3d 861, 865 (D. Md. 2018) (quoting *Andrews v. Daw*, 201 F.3d 521, 525 (4th Cir. 2000)). Judges in this district have "favored analysis under Rule 12(b)(1) because, while the Eleventh Amendment cannot be considered a 'true limit' on this Court's subject-matter jurisdiction, it nevertheless functions as 'a block on the exercise of that jurisdiction.'" *Id.* (quoting *Biggs v. Meadows*, 66 F.3d 56, 60 (4th Cir. 1995) and collecting cases).

The "test for determining whether a [s]tate has waived its immunity from federal-court jurisdiction is a stringent one." *MedSense, LLC v. Univ. Sys. of Maryland*, 420 F. Supp. 3d 382, 393 (D. Md. 2019) (citation omitted). A court may find that a state has waived its Eleventh Amendment immunity in one of two ways: (1) a state makes a "'clear distinction' that it intends to submit itself to [federal] jurisdiction"; or (2) a state voluntarily invokes federal jurisdiction. *Id.* (quoting *Coll. Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 675-76 (1999)).

Here, the State of Maryland has not made a "clear distinction" that it submits to federal jurisdiction. Although the State of Maryland has waived its sovereign immunity for certain cases brought in state courts, *see* Md. Code, State Gov't § 12-202(a), it has not waived its general immunity under the Eleventh Amendment to suit in federal court. "A State's constitutional interest in immunity encompasses not merely *whether* it may be sued, but *where* it may be sued." *Pennhurst State School & Hosp.*, 465 U.S. at 100 (emphasis in original). In addition, the State of

Maryland has not voluntarily invoked federal jurisdiction. Plaintiff sued Sheriff Cameron (and therefore, the State of Maryland) in this Court; none of the defendants removed the case here from state court. Accordingly, the State of Maryland is immune from suit under the Eleventh Amendment, and Sheriff Cameron shares in this immunity for Plaintiff's official capacity claims against him.

Sheriff Cameron also has statutory immunity under Maryland state law. Under the MTCA, Sheriff Cameron is defined as "State personnel." Md. Code, State Gov't § 12-101(a)(6). Under Maryland law, "State personnel" are immune from prosecution for torts arising from acts performed "within the scope of employment and without malice or gross negligence." *Bahreini v. Zsebedics*, No. PX-23-1357, 2024 WL 692860, at *5 (D. Md. Feb. 20, 2024) (quoting *Lee v. Cline*, 384 Md. 245, 261 (2004)); Md. Code, Cts. & Jud. Proc. § 5-522(b). Malice is "characterized by evil or wrongful motive, intent to injure, knowing and deliberate wrongdoing, ill-will or fraud." *Id.* (quoting *Shoemaker v. Smith*, 353 Md. 143, 163 (1999)). Gross negligence is defined as "an intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another." *Id.* (quoting *Barbre v. Pope*, 402 Md. 157, 187 (2007)); *see also Boyer v. State*, 323 Md. 558, 578-79 (1991) (holding that conclusory allegations of gross negligence are not enough to bring the claim outside the immunity provisions of the MTCA)).

Plaintiff has not plausibly alleged that Sheriff Cameron acted with malice or gross negligence. Plaintiff's only allegations about Sheriff Cameron concern (i) his duties to supervise his subordinate officers and to intervene if they violate a person's constitutional rights, ECF No. 1 ¶ 61; (ii) his "duty of care to plaintiff to prevent the loss of liberty and mental abuse sustained by plaintiff," *id.* ¶ 102; and (iii) general allegations that Sheriff Cameron is liable for the misconduct of his subordinates under the doctrine of *respondeat superior*, *id.* ¶¶ 107-109. None of Plaintiff's

allegations concern actions actually taken by Sheriff Cameron. Even when construed in the light most favorable to Plaintiff, the allegations against Sheriff Cameron are not allegations of malice or gross negligence. Accordingly, Sheriff Cameron is entitled to statutory immunity for Plaintiff's claims against him. These claims will be dismissed with prejudice. In addition, Plaintiff's claim against Sheriff Cameron for *respondeat superior* (Count VI) will be dismissed with prejudice because it does not state a claim for which relief can be granted. *See Cooper v. Doyle*, No. DKC-22-0052, 2022 WL 16923857, at *5 (D. Md. Nov. 14, 2022) (explaining that there is no separate cause of action for *respondeat superior*).[3]

**B.    Board of County Commissioners for St. Mary's County, Maryland's Motion to Dismiss (ECF No. 54)**

The Board of County Commissioners for St. Mary's County, Maryland ("County") moves to dismiss Plaintiff's claims against it. ECF No. 54.

**1.    Plaintiff's State-Law Claims Must Be Dismissed Under the Local Government Tort Claims Act.**

Under the Local Government Tort Claims Act ("LGTCA"), "an action for unliquidated damages may not be brought against a local government or its employees unless" notice of the claim is "given within 1 year after the injury." Md. Code, Cts. & Jud. Proc. § 5-304(b). The required notice must "be in writing and . . . state the time, place, and cause of the injury." *Id.* For claims against the County and its employees, the notice must be "given in person or by certified mail, return receipt requested" by the claimant to "the county commissioners or county council of the defendant local government." *Id.* § 5-304(c).

---

[3] To be clear, the Court is not dismissing Plaintiff's claims against Sheriff Cameron for failure to comply with the MTCA's notice requirement. Sheriff Cameron did not argue that dismissal was warranted on this basis

"Compliance with the LGTCA is a condition precedent to maintaining suit against a local government."[4] *Edwards v. Montgomery Coll.*, No. TDC-17-3802, 2018 WL 4899311, at *8 (D. Md. Oct. 9, 2018). The purpose of the notice requirement is to allow the local government time to "conduct its own investigation of the incident while the evidence is still fresh so as to ascertain the character and extent of the injury and the responsibility the local government may have for it." *Id.* (citing *Rios*, 872 A.2d at 14). A claimant's failure to strictly comply with the LGTCA's notice requirements will be excused "if, within 1 year after the injury, the defendant local government has actual or constructive notice of: (1) The claimant's injury; or (2) The defect or circumstances giving rise to the claimant's injury." Md. Code, Cts. & Jud. Proc. § 5-304(e).

The County is a local government to which the LGTCA applies. It argues that Plaintiff failed to meet the LGTCA's notice provision and his claims against the County must be dismissed. ECF No. 54-1 at 5-7. According to the undisputed evidence submitted by the County, Plaintiff's Complaint "provided the first notice of this incident." *Id.* at 6. As a result, the County has been "prevented . . . from conducting a timely investigation that would have aided in their defense in this matter." *Id.* In support of its argument, the County relies on an affidavit from Angela Blondino (a paralegal employed by the Board of County Commissioners). ECF No. 54-3. Ms. Blondino

---

[4] Plaintiff was required to plead compliance with the LGTCA's notice provision, *see Edwards*, 2018 WL 4899311, at *8 (citing *Hansen v. City of Laurel*, 25 A.3d 122, 137 (Md. 2011), but Plaintiff did not plead compliance as required. Instead, he alleged only that "[o]n information and belief, corporate authorities were advised of the Sheriff's violations, including the substantive information required under Section 5-304." ECF No. 1 ¶ 20. As an initial matter, Plaintiff's allegation based only on "information and belief" is improper because he was personally required to comply with the LGTCA's notice provision. He either complied or he did not. In either case, Plaintiff has personal knowledge and need not base his pleading on "information and belief." But more importantly, Plaintiff did not plead how and when he provided notice to all of the local government defendants as required by LGTCA. His conclusory statement that such notice was provided is implausible. As explained below, the Court concludes that Plaintiff did not comply with the LGTCA's notice provision, so any amendment of his complaint to include an allegation of compliance would be futile.

states that Plaintiff never provided the County with notice of his claims under the LGTCA, and that the County first learned of his claims when it received a copy of the Complaint in December 2022, when the Interim County Administrator/County Attorney was served with a copy of the Complaint. *Id.* at 2.

Plaintiff did not respond to the County's argument about deficient LGTCA notice.

The Court finds that Plaintiff failed to comply with the LGTCA's notice provisions. There is no evidence that Plaintiff provided any notice to the County before December 2022, when the County received a copy of Plaintiff's Complaint. And there is no evidence that the County learned of Plaintiff's injury or the "defect or circumstances" giving rise to it within one year after the date of the injury. When the County received a copy of the Complaint, more than two years had passed from the date of the Plaintiff's alleged injury. Plaintiff's failure to provide notice requires that his claims against the County be dismissed pursuant to the LGTCA. Accordingly, the motion to dismiss filed by the County is granted to the extent that Plaintiff has asserted claims arising from state law against it.[5]

### 2.     Plaintiff Has Not Stated Plausible Claims Against the County.

In addition, the County's motion to dismiss is granted because Plaintiff does not state plausible claims for relief against it. Plaintiff alleges that the County failed to properly supervise its employees and that such failure was a cause of Plaintiff's injuries. But the Sheriff and deputy sheriffs of St. Mary's County are state employees; they are not employed by the County. *Rucker*,

---

[5] It appears that Plaintiff's sole claim against the County is for "municipal and supervisory liability." ECF No. 1 ¶¶ 92-100. It is unclear whether this claim arises from federal constitutional law, state constitutional law, state common law, or from some other basis. In any event, the Court clarifies that to the extent Plaintiff has raised a claim against the County arising from federal law or the United States Constitution, it is only dismissed because Plaintiff has failed to state a plausible claim for relief; it is not dismissed for failure to comply with the notice requirements of the LGTCA.

316 Md. at 281 (holding that "as a matter of Maryland law, the Sheriff and Deputy Sheriffs . . . are officials and/or employees of the State of Maryland."). And Plaintiff does not identify any employees of the County who were involved in his injuries. *See id.* at 292 ("[C]ounties and municipalities in Maryland are generally not liable under the doctrine of respondeat superior for the tortious acts of State officials or State employees acting in the scope of their employment."). Because the County had no supervisory authority over the Sheriff and deputy sheriffs of St. Mary's County, Plaintiff's supervisory liability claims against the County are implausible and must be dismissed with prejudice.

### C.    Deputy Graves's Motion to Dismiss (ECF No. 53)

Deputy Graves moves to dismiss, or in the alternative, for summary judgment. ECF No. 53. Because Deputy Graves submitted matters outside the pleadings in connection with his motion, and because he specified that he seeks summary judgment as an alternative form of relief, Plaintiff is on "actual notice" that the Court may dispose of the motion under Rule 56. *See Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 260–61 (4th Cir. 1998). The Court will exercise its discretion to construe Deputy Graves's motion as a motion for summary judgment as to Plaintiff's claims in Count I and III. *See* Fed. R. Civ. P. 12(d); *Dickerson v. United Parcel Serv., Inc.*, Civ. NoWMN-15-2, 2015 WL 3889975, at *2 (D. Md. June 23, 2015). The Court will treat Deputy Graves's motion as a motion to dismiss as it relates to Count II of Plaintiff's Complaint.

### 1.    The Deputies Had Probable Cause to Arrest Mr. Boas.

Deputy Graves moves to dismiss Plaintiff's claim for unreasonable search and seizure (Count I) and violation of free speech rights (Count III). ECF No. 53-1 at 5-8. The Fourth Amendment provides, in part, that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." In the Fourth

Amendment context, a search occurs "when the government intrudes upon a person's "reasonable expectation of privacy." *Katz v. United States*, 389 U.S. 347, 360 (1967) (Harlan, J., concurring). A seizure occurs when a law enforcement officer "by means of physical force or show of authority, terminates or restrains [the suspect's] freedom of movement." *Brendlin v. California*, 551 U.S. 249, 254 (citations and quotation marks omitted); *see also Torres v. Madrid*, 592 U.S. 306, 309 (2021) ("The application of physical force to the body of a person with intent to restrain is a seizure."). "If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001). The "substance of all definitions of probable cause is a reasonable ground for belief of guilt," particularized with respect to the person to be searched or seized. *Maryland v. Pringle*, 540 U.S. 366, 371 (2003).

The Fourth Circuit has explained that retaliatory-arrest claims under the First Amendment and unreasonable-seizure claims under the Fourth Amendment "fail[] as a matter of law if there was 'probable cause for the arrest.'" *Hulbert v. Pope*, 70 F.4th 726, 738 (4th Cir. 2023), *cert. denied*, 144 S. Ct. 494 (2023) (quoting *Nieves v. Bartlett*, 139 S. Ct. 1715, 1724 (2019) and *Brown v. Gilmore*, 278 F.3d 362, 367 (4th Cir. 2002)).

Deputies Graves and Rishel had probable cause to arrest Mr. Boas for violating the Stay-at-Home order. It is undisputed that the Stay-at-Home order defined the only "essential activities" for which persons living in the State of Maryland were permitted to leave their homes on April 22, 2020 (the date of the incident). *See* ECF No. 53-3 at 2. Mr. Boas concedes that he was living in the State of Maryland on April 22, 2020, rendering him subject to the Stay-at-Home order. *See* ECF No. 84-2 at 4-5. The Stay-at-Home order defined seven categories of "essential activities," for which Marylanders were permitted to leave their homes: (i) obtaining necessary supplies or

services, including groceries; (ii) engaging in activities essential for health and safety, including obtaining medical care; (iii) caring for a family member or friend in another household; (iv) traveling to and from an educational institution to obtain meals or materials for distance learning; (v) exercising outdoors; (vi) travel required by a law enforcement officer or court order; and (vii) traveling to and from a government building for a necessary purpose. ECF No. 53-3 at 3. And the Stay-at-Home order required State law enforcement officers to "execute and enforce" the order. *Id.* at 7. The order provided that anyone who violated it would be guilty of a misdemeanor and subject to imprisonment not exceeding one year, a $5,000 fine, or both. *Id.*

The Stay-at-Home order did not permit Marylanders to "walk[] back and forth" in front of a place of business to take pictures and video recordings. *See* ECF No. 84-2 at 2. Neither did the Stay-at-Home order allow Mr. Boas to "do what [he] want[ed]" after being told to go home. ECF No. 57, Ex. 1C at 14:48-14:55. Deputy Graves observed Mr. Boas when he entered the Target. And he saw Mr. Boas again when he had exited the Target. When Mr. Boas exited the Target, Deputy Graves observed that Mr. Boas remained in front of the store. At that time, Deputy Graves had probable cause to believe (i) that Mr. Boas had completed his grocery shopping; (ii) that Mr. Boas was no longer engaging in an essential activity under the Stay-at-Home order; and (iii) that Mr. Boas had violated the Stay-at-Home order because he did not return home after completing

his essential activity.[6] As soon as Deputy Graves saw Mr. Boas pacing outside the Target Starbucks window, he had probable cause to arrest him for violating the Stay-at-Home order.[7]

Since the arrest was lawful, so was the subsequent search incident to arrest. *See United States v. Robinson*, 414 U.S. 218, 235 (1973) ("[I]n the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a 'reasonable' search under that Amendment."); *Maryland v. King*, 569 U.S. 435, 449, 133 S. Ct. 1958, 1971, 186 L. Ed. 2d 1 (2013) ("[I]ndividual suspicion is not necessary, because '[t]he constitutionality of a search incident to an arrest does not depend on whether there is any indication that the person arrested possesses weapons or evidence.'" (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 35 (1979)). The Court further finds that the search of Mr. Boas's person

---

[6] The Stay-at-Home order permitted outdoor walking, hiking, running, and biking. If Mr. Boas had been charged with violating the Stay-at-Home order, he might have argued that he was actually engaging in permitted exercise while standing and pacing outside the Target (and recording the officers on his phone). But Deputy Graves still had probable cause to believe that Mr. Boas had violated the Stay-at-Home order. *See Brinegar v. United States*, 338 U.S. 160, 175-76 (1949) ("Probable cause exists where 'the facts and circumstances within their (the officers') knowledge and of which they had reasonably trustworthy information (are) sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed." (quoting *Carroll v. United States*, 267 U.S. 132, 162 (1925)); *District of Columbia v. Wesby*, 583 U.S. 48, 61 (2018) ("[P]robable cause does not require officers to rule out a suspect's innocent explanation for suspicious facts."); *Wadkins v. Arnold*, 214 F.3d 535, 541 (4th Cir. 2000) ("Reasonable law enforcement officers are not required to exhaust every potentially exculpatory lead or resolve every doubt about a suspect's guilt before probable cause is established." (internal quotation marks omitted)).

[7] In the affidavit attached to his response to the Defendants' motions, Mr. Boas states that he "planned to continue shopping at Giant grocery store, but because of the incident, [h]e left to go home." ECF No. 84-2 at 4. If Mr. Boas had been charged with a crime, his intention to continue shopping at the Giant might have been a viable defense. But Mr. Boas presents no evidence that Deputy Graves knew of Mr. Boas's plans to continue shopping when he made the arrest. Because Deputy Graves could not read Mr. Boas's mind, he was limited to making observations with his other senses to determine that Mr. Boas had violated the Stay-at-Home order. Deputy Graves correctly determined that he had probable cause to stop, arrest, and search Mr. Boas.

and shopping bag, which occurred incident to his arrest, was reasonable and permitted under established caselaw. *See, e.g.*, *United States v. Bullard*, 645 F.3d 237, 245 (4th Cir. 2011).

Because the stop, arrest, and search of Mr. Boas were lawful, Mr. Boas's claims for unreasonable search and seizure (Count I) and retaliatory-arrest (Count III) both fail.[8] *Hulbert v. Pope*, 70 F.4th at 738. Accordingly, Deputy Graves's Motion is **GRANTED** as to these claims. Summary judgment will be entered in favor of Deputy Graves on Counts I and III.[9]

> ### 2.   Mr. Boas Has Not Stated a Plausible Claim for Violation of His Equal Protection Rights.

Mr. Boas has not stated a plausible claim for any violation of his rights under the Fourteenth Amendment. His Complaint does not specify how he believes his Fourteenth Amendment rights were violated and the Court can discern no basis for such a claim. He devotes two sentences to the claim in his reply brief: "In this case, the Defendant's actions also violated the Plaintiff's right to equal protection under the law, a right secured by the Fourteenth Amendment. The selective enforcement of a law based on retaliatory intent has been held to violate the Fourteenth Amendment." ECF No. 84-1 at 17. To establish a selective enforcement claim under Section 1983 and the Fourteenth Amendment, a plaintiff must establish that the officer's conduct was motivated

---

[8] The Court reaches the same result for Plaintiff's claim under Article 40 of the Maryland Declaration of Rights. *Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cnty., Md.*, 684 F.3d 462, 468 n.3 (4th Cir. 2012) (explaining that Article 40 is "'co-extensive' with the First Amendment, and is construed *in pari materia* with it." (quoting *Newell v. Runnels*, 407 Md. 578, 967 A.2d 729, 743 n.11 (2009)).

[9] Alternatively, because Deputy Graves did not violate any of Mr. Boas's federal statutory or constitutional rights, he is also entitled to qualified immunity. *See Spivey v. Norris*, 731 Fed. Appx. 171, 175 (4th Cir. 2018) (noting "if probable cause existed such that there was no Fourth Amendment violation, [the officer] would be entitled to qualified immunity on the claim against him in his individual capacity."); *see generally Barrett v. PAE Government Services, Inc.*, 975 F.3d 416, 428 (4th Cir. 2020) (explaining that "Qualified immunity bars § 1983 actions against government officials in their individual capacities unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time." (internal quotation marks omitted)).

by a discriminatory intent and had a discriminatory effect. *See Thompson v. Badgujar*, No. DLB-20-1272, 2023 WL 6381509, at *3 (D. Md. Sept. 29, 2023) (citing *Cent. Radio Co. Inc. v. City of Norfolk, Va.*, 811 F.3d 625, 634 (4th Cir. 2016) and *Johnson v. Holmes*, 782 F. App'x 269, 276 (4th Cir. 2019)). Plaintiff has not plausibly alleged that Deputy Graves or Deputy Rishel's conduct was motivated by a discriminatory intent and that their actions had a discriminatory effect. The only reference to discrimination in Plaintiff's Complaint is in reference to the officers' interactions with the Black man riding his bicycle. Of course, Mr. Boas lacks standing to bring a claim on behalf of the man riding his bicycle, and the Court does not understand him to have raised such a claim here. Accordingly, any claims under the Fourteenth Amendment are dismissed with prejudice.

Because Article 24 of the Maryland Declaration of Rights and the Fourteenth Amendment have the same meaning, *Pitensberger v. Pitensberger*, 410 A.2d 1052, 1056 (Md. 1980), Article 24 is interpreted *in pari materia* with the Fourteenth Amendment. *Taylor v. Go-Getters, Inc.*, No. ELH-20-3624, 2021 WL 5840956, at *16 (D. Md. Dec. 9, 2021). Plaintiff's claims under Article 24 will be dismissed for the same reasons.

### 3.   Mr. Boas Has Not Stated a Plausible Intentional Infliction of Emotional Distress Claim.

In Count II, Mr. Boas asserts a claim of intentional infliction of emotional distress ("IIED") against Deputy Graves. ECF No. 1 ¶¶ 84-87. He alleges that Deputy Graves "acted intentionally by subjecting Plaintiff to the humiliating, inconvenient, annoying arrest and public search." *Id.* ¶ 85. As a result, Mr. Boas claims that he suffered "emotional distress that was severe and disabling." *Id.* ¶ 86.

"Generally speaking, claims for IIED are disfavored, difficult to establish and, as such, rarely viable." *Brown v. Harford Bank*, No. ELH-21-0096, 2022 WL 657564, at *16 (D. Md. Mar.

4, 2022) (internal quotation marks omitted). To prevail on an IIED claim under Maryland law, a plaintiff must show that "(1) the defendant's conduct was intentional or reckless; (2) [his] conduct was extreme and outrageous; (3) there was a causal connection between the defendant's wrongful conduct and the emotional distress suffered; and (4) the emotional distress was severe." *Id.* (citing *Harris v. Jones*, 281 Md. 560, 566 (1977)). The defendant's conduct must be "so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Id.* (internal quotation marks and citations omitted); *Farasat v. Paulikas*, 32 F. Supp. 2d 244, 248 (D. Md. 1997) ("To be actionable, the conduct relied upon must strike to the very core of one's being, threatening to shatter the frame upon which one's emotional fabric is hung." (internal quotation marks omitted)). Maryland's Supreme Court has "repeatedly advised that recovery for IIED will be meted out sparingly." *Id.* (quoting *Figueiredo-Torres v. Nickel*, 321 Md. 642, 653 (1991)).

Even accepting Plaintiff's allegations as true, he has failed to state a plausible IIED claim because Deputy Graves's conduct was not extreme or outrageous. As explained above, Deputy Graves made a lawful arrest of Mr. Boas for a violation of the Stay-at-Home order. Mr. Boas was detained for a short time (about an hour) and then released. Deputy Graves's conduct simply does not "strike to the very core of one's being," or "threaten[] to shatter the frame upon which one's emotional fabric is hung." *Id.* Because Mr. Boas has not stated a plausible claim for IIED, Count II will be dismissed with prejudice.

In making this finding, the Court does not minimize what Mr. Boas may have experienced in his 2020 encounter with law enforcement. It appears Mr. Boas initially interacted with the deputies only because he believed they had mistreated another person. It is understandable that Mr. Boas would interpret his arrest as being done in retaliation for speaking up on behalf of the

other person. Yet even if Mr. Boas is correct, his stop, arrest, and search are still valid because the deputies had probable cause to believe he had violated the Stay-at-Home order. *See, e.g.*, *Graham v. Connor*, 490 U.S. 386, 397 (1989) ("[T]he question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation."). Mr. Boas may be of the opinion he has suffered damages, but he has not presented a viable theory upon which he can recover in this Court.

### D.      Motions for Joinder

Mr. Boas moves to join additional St. Mary's County, Maryland (ECF No. 72), the St. Mary's County Sheriff's Office (ECF No. 73), Deputy Rishel (ECF No. 74), and Sheriff Cameron, in his individual capacity (ECF No. 83).

The motion to join St. Mary's County (ECF No. 72) is denied because St. Mary's County is already a Defendant in this case, and the County concedes as much. ECF No. 79.

The motion to joint Deputy Rishel is denied because, as explained above, Plaintiff's claims against Deputy Rishel are not viable because his stop, arrest, and search were lawful and based on probable cause. Allowing Plaintiff to amend his Complaint to include Deputy Rishel when the Court has already concluded that Plaintiff's claims against Deputy Rishel are meritless would be futile.

The motion to join the St. Mary's County Sheriff's Office (ECF No. 73) is denied because that office is not a separate legal entity subject to suit. *See Revene v. Charles Cnty. Comm'rs*, 882 F.2d 870, 874 (4th Cir. 1989) ("The separate claim against the 'Office of Sheriff' was rightly dismissed on the basis that this 'office' is not a cognizable legal entity separate from the Sheriff in his official capacity and the county government of which this 'office' is simply an agency.").

The motion to join Sheriff Cameron in his individual capacity (ECF No. 83) is denied because, as explained above, Plaintiff has not stated plausible claims against Sheriff Cameron, even if those claims are asserted against him in his individual capacity, and because Sheriff Cameron has state statutory immunity against liability.

### E.      Motion to Amend Complaint

Mr. Boas seeks leave to amend his complaint.[10] ECF No. 77. Previously, the Court denied Mr. Boas's motion for leave to amend his complaint. ECF No. 64. In its order denying that motion, the Court explained: "Under the Court's Local Rules, pleadings 'should be no longer than necessary and, except in removals of a state action, shall not exceed forty (40) pages in length.' Plaintiff's proposed Amended Complaint does not comply with Local Rule 103.2. His motion is therefore denied." *Id.* This time, Plaintiff's proposed amended complaint complies with the Local Rules' page limits.

Rule 15 governs amendments to pleadings. Under Rule 15(a), a party may amend their pleading as of right until 21 days after serving the pleading or 21 days after service of a responsive pleading or motion to dismiss. "In all other cases," a party seeking to amend a pleading may only do so "with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires." *Id.*; *Foman v. Davis*, 371 U.S. 178, 182 (1962). "A district court may deny a motion to amend when the amendment would be prejudicial to the opposing party, the moving party has acted in bad faith, or the amendment would be futile." *Equal Rts. Ctr. v. Niles Bolton Assocs.*, 602 F.3d 597, 603 (4th Cir. 2010) (citing *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006) (en banc)). A proposed amendment is futile when it

---

[10] After he filed the motion to amend, Mr. Boas clarified that Defendants did not consent to the proposed amendment. ECF No. 81.

"is clearly insufficient or frivolous on its face." *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 510 (4th Cir. 1986).

The Court will deny Plaintiff leave to amend because any amendment would be futile. Plaintiff's proposed amended complaint was filed after the Defendants' motions were filed. As such, Plaintiff was aware of the alleged deficiencies in his Complaint. He still failed to correct them. All of the claims raised in the proposed amended complaint fail for the same reasons as the original claims failed. Mr. Boas's proposed amended complaint is "clearly insufficient" to survive as a matter of law. Allowing the proposed amendment would also be prejudicial to Defendants inasmuch as they would be required to refile the same arguments that were successful for the original Complaint. Accordingly, Plaintiff's motion for leave to amend (ECF No. 77) is **DENIED**. *See Cozzarelli v. Inspire Pharms. Inc.*, 549 F.3d 618, 630 (4th Cir. 2008)

## V.      Conclusion

For the reasons stated above, Defendant Jason Graves's Motion to Dismiss or, in the Alternative, for Summary Judgment (ECF No. 53) is **GRANTED**; Defendants Timothy K. Cameron and the Board of County Commissioners of St. Mary's County's Motion to Dismiss or, in the Alternative, for Summary Judgment (ECF No. 54) is **GRANTED**; Plaintiff Steven Matthew Boas's motions for joinder of St. Mary's County, Maryland (ECF No. 72), St. Mary's County Sheriff's Office (ECF No. 73), William Rishel (ECF No. 74), and Sheriff Cameron (ECF No. 83) are **DENIED**; and Plaintiff Steven Matthew Boas's Motion for Leave to File Amended Complaint (ECF No. 77) and corresponding motion for leave to file physical exhibit (ECF No. 82) are **DENIED**. The parties' stipulation to the dismissal of Plaintiff's claims against the State of Maryland and Leonardtown, Maryland (ECF No. 69) is **APPROVED**.

Plaintiff's claims against all Defendants are dismissed with prejudice. Pursuant to Fed. R. Civ. P. 58(a), a separate Order will accompany this Memorandum Opinion.


Date: March 19, 2024                                      _____/s/_____

                                                         Timothy J. Sullivan
                                                         Chief United States Magistrate Judge